NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0687n.06

No. 09-3808

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Nov 04, 2010**

LEONARD GREEN, Clerk

LUIS COLON,                                     )
                                                )
    Petitioner-Appellee,                        )
                                                )
                                                )
v.                                              )  On Appeal from the United States
                                                )  District Court for the Northern
ROBERT TASKEY and LAUREN MOORE,                 )  District of Ohio
                                                )
    Respondents-Appellants.                     )
                                                )

Before:      BOGGS, COLE, and CLAY, Circuit Judges

BOGGS, Circuit Judge.  Luis Colon's petition for a writ of habeas corpus sought relief from an Ohio state court conviction on one count of domestic violence.  Colon alleged that his constitutional rights under the Confrontation Clause of the Sixth Amendment were violated when the prosecution introduced at trial statements made by his victim, who did not testify, to a police officer shortly after the incident.  The Ohio Court of Appeals found no Confrontation Clause violation.  The federal district court, however, granted the writ, holding that the state court unreasonably applied the Supreme Court's Confrontation Clause jurisprudence.  In so holding, the district court erred in applying the deferential standard of review that governs collateral attacks on state court decisions.  Because the state court correctly identified and reasonably applied the legal principles governing this case, we reverse the district court's order granting Colon's petition.

I

During the early morning hours of August 28, 2004, Evelyn Rivera and Adam Pabon witnessed a man beating their neighbor on the street. While Rivera called 911, Pabon grabbed a baseball bat and unsuccessfully tried to stop the assault. The man fled when the police arrived. Police officer Brenda Korber approached the victim, who was sitting on a curb with a bruised and bloodied face. When asked what had happened, the victim told Korber she had been walking home with another man when the assailant attacked her, hitting her on the face and head. The victim identified Colon as the assailant and provided his date of birth, adding that the two had dated for two years and once lived together but had been separated for six months.

On September 17, 2004, Colon was charged in Cleveland Municipal Court with one count of domestic violence. When the case proceeded to trial on January 17, 2006, the victim did not testify, but Korber testified to the statements made by the victim at the scene of the crime. Defense counsel raised a hearsay objection, but the trial court admitted the statements under the excited utterance exception to the hearsay rule. The statement regarding Colon's cohabitation with the victim was required to prove the domestic violence offense, of which Colon was convicted.

Colon appealed the conviction, arguing that his "right to confrontation was violated when the prosecution introduced testimonial hearsay statements from the alleged victim." *City of Cleveland v. Colon*, No. 87824, 2007 WL 179082, at *2 (Ohio Ct. App. Jan. 25, 2007). The state appellate court affirmed the conviction on January 25, 2007. *Id.* It held that, because "the primary purpose" of Korber's questioning at the crime scene was to "assist the victim in an ongoing emergency," the victim's statements were non-testimonial under *Crawford v. Washington*, 541 U.S.

36 (2004), and *Davis v. Washington*, 547 U.S. 813 (2006). *Id*. at *5. The Ohio Supreme Court did not accept Colon's petition for review, *Cleveland v. Colon*, 868 N.E.2d 680 (Ohio 2007) (table), and the United States Supreme Court denied his petition for a writ of certiorari. *Colon v. City of Cleveland*, 552 U.S. 1148 (2008).

On January 23, 2008, Colon filed a petition for a writ of habeas corpus in federal district court, again arguing that the Confrontation Clause barred the prosecution from introducing the victim's statements at trial. The district court conditionally granted Colon's habeas petition, holding that, because Colon fled the scene when the police arrived, the state court's conclusion that an "ongoing emergency" existed was unreasonable.

II

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), governs collateral attacks on state court decisions. Under AEDPA, federal courts cannot grant a habeas petition for any claim that a state court adjudicated on the merits unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *see also Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001). In *Williams v. Taylor*, the Supreme Court explained that a federal court may grant a petition under the "unreasonable application" clause of § 2254(d)(1) "if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. 362,

413 (2000). Even if a federal court determines that a state court incorrectly applied federal law, it may not grant habeas relief unless it also holds that the state court's application was unreasonable. *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000).

## III

Our analysis of when the Sixth Amendment bars the admission of statements made by a non-testifying witness begins with *Crawford v. Washington*. Under *Crawford*, because the Sixth Amendment gives the "accused" a right to confront "witnesses against him," "testimonial" statements of a witness who does not appear at trial may not be admitted unless the defendant had a prior opportunity to cross-examine the witness. 541 U.S. at 53-54; *United States v. Arnold*, 486 F.3d 177, 187 (6th Cir. 2007) (en banc). In *Crawford*, the non-testifying witness's statements were made while she was in custody; she had been read her *Miranda* rights, and her answers were tape-recorded. 541 U.S. at 38. Although *Crawford* did not precisely define the term "testimonial," it emphasized that "[s]tatements taken by police officers in the course of interrogations are . . . testimonial under even a narrow standard." *Id.* at 52.

But the Court soon clarified in *Davis* and its companion case, *Hammon v. Indiana*, that not all statements made to law enforcement are "testimonial." 547 U.S. at 822. "Statements are non-testimonial," the Court explained, when made "under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Ibid. Davis* involved a 911 call made while the alleged assailant was actually in the caller's home. *Id.* at 817. The Court held the caller's statements to be non-testimonial. *Id.* at 828. The Court contrasted those statements with those at issue in *Hammon*, in which police responding to a domestic

disturbance were told by the wife that "nothing was the matter." *Id.* at 819. While police confined the husband to another room, the wife completed an affidavit in which she described an altercation that had occurred before the police arrived. *Id.* at 820. The Court held that the affidavit and the statements made by the wife to the police were not made during an emergency and were therefore testimonial. *Id.* at 830.

Distinguishing the statements made during the 911 call in *Davis* from those made to police officers in *Crawford* and *Hammon*, the Court explained, "In *Davis*, [the victim] was speaking about events as they were actually happening, rather than describing past events." *Id.* at 828. In *Crawford* and *Hammon*, on the other hand, "[b]oth declarants were actively separated from the defendant . . . . Both statements deliberately recounted, in response to police questioning, how potentially criminal past events began and progressed. And both took place some time after the events described were over." *Id.* at 830. The Court emphasized that context matters: "we do not hold . . . that *no* questions at the scene will yield non-testimonial answers . . . . [O]fficers called to investigate . . . need to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim." *Id.* at 832 (internal quotation marks and brackets omitted).

IV

Under AEDPA, our review of the Ohio Court of Appeals's decision in Colon's case is limited to whether the court correctly identified the "governing legal principle" and whether it "unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Ohio court correctly identified as the governing law the Supreme Court cases just discussed. *Cleveland*,

2007 WL 179082, at *2-4. Applying that law, the court found that the victim's statements to Officer Korber were made during an "ongoing emergency" and were therefore non-testimonial. *Id.* at *5. It reasoned that, "[u]nlike the circumstances in *Hammon*, the incident had just concluded when the officer arrived, the defendant had just fled the scene and had not been secured by the police, and the victim was hurt, bleeding and crying." *Id*. at *4. "Additionally, the victim made the statements with the primary purpose of enabling the police . . . to apprehend the person involved." *Id.* at *5.

A few months after the Ohio appellate court affirmed Colon's conviction, this court had occasion to apply the same precedents in *United States v. Arnold*, a case heard on direct review from a federal court conviction. In *Arnold*, we analyzed three sets of statements made by a non-testifying witness: 1) statements made during a 911 call just after the witness had fled an alleged assailant who was "fixing to shoot" her; 2) statements made by the still-frantic witness to officers who arrived on the scene while the assailant was at large; and 3) statements made by the witness to the police when the assailant suddenly reappeared on the scene. 486 F.3d at 189-92. We found that *all* of the statements could be considered non-testimonial because they were made during an "ongoing emergency." *Ibid.* Even when the defendant was not on the scene, "an emergency still existed" because the defendant remained at large and "the victim was still screaming and crying." *Id.* at 190. Thus, for this court, the distinction between *Crawford/Hammon* and *Davis* turned neither on whether police were present nor on whether the statements were made during the course of an altercation. We noted that each statement "must be assessed on its own terms and in its own context" and that "difficult boundary disputes will continue to emerge." *Id*. at 189.

Two years after we decided *Arnold*, the district court held that the Ohio state court's application of *Crawford*, *Davis*, and *Hammon* in Colon's case was not just wrong, but "unreasonable." Quoting *Davis*, 547 U.S. at 828, the district court emphasized that the Supreme Court distinguished between statements describing "events as they were actually happening" and those describing "past events." It reasoned that "there was no ongoing emergency" in this case because "Colon had already left the vicinity." The court instead viewed the case as analogous to *Hammon*, in which the police discussed past incidents with a victim who indicated that she faced no immediate threat. *See Davis*, 547 U.S. at 830. The district court did not mention *Arnold*, even though it was brought to the court's attention by the magistrate judge. The magistrate judge's report and recommendation stated: "In many respects, this case is more similar to the facts of [*Arnold*] than either the *Davis* or *Hammon* scenarios." It also emphasized our statement in *Arnold* that the boundary between *Crawford/Hammon* and *Davis* is not clear cut. *See* 486 F.3d at 189. The respondents did not mention *Arnold* in their written submissions to the district court, but Colon's counsel addressed the case and attempted to distinguish it in her objections to the magistrate judge's report.

The magistrate judge noted that the circumstances involved here are not unlike those under which the second set of statements in *Arnold* were made. In both cases, a still-distressed victim was interviewed by police officers while her alleged assailant was at large. In both cases, the police asked questions "in order to assess the situation," to learn "whom they [were] dealing with," and to ascertain the "possible danger to the potential victim." *Davis*, 547 U.S. at 832.

There are of course, differences between this case and *Arnold*: in the latter, the assailant had threatened the witness's life with a gun, the witness had previously called 911 in hysterics, and the at-large assailant was unaware that police were on the scene. The situation in *Arnold* may have involved a more obvious "emergency." Under AEDPA, however, the question before us is not whether the cases can be distinguished, but whether the state court's application of *Crawford* and *Davis* to the facts of Colon's case was so far wrong as to be "unreasonable." The boundary between "arguably wrong" and "unreasonable" is not precisely defined. But when this court, sitting en banc, came to a similar conclusion when addressing arguably analogous facts just four months after Colon's conviction was affirmed, the state court was not unreasonable in finding the statements made by Colon's victim to be non-testimonial.

V

Because the Ohio state court reasonably applied the Supreme Court's Confrontation Clause jurisprudence in affirming Colon's conviction, we REVERSE the district court's grant of Colon's petition for a writ of habeas corpus.