[Cite as *State v. Little*, 2016-Ohio-8398.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

LARISCO L. LITTLE,

    DEFENDANT-APPELLANT.

CASE NO. 1-16-29

O P I N I O N

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2015 0339

**Judgment Affirmed**

Date of Decision: December 27, 2016

APPEARANCES:

    *Linda Gabriele* for Appellant

    *Kenneth J. Sturgill* for Appellee

Case No. 1-16-29

**WILLAMOWSKI, J**.

{¶1} Defendant-appellant Larisco Little ("Little") appeals the decision of the Allen County Court of Common Pleas finding the defendant guilty of one count of domestic violence in violation of R.C. 2919.25(A), (D)(4). On appeal, Little raises three assignments of error: 1) the trial court erred by admitting hearsay in violation of Little's right to confrontation; 2) the trial court erred by entering a verdict against the manifest weight of the evidence; 3) and the State committed a manifest miscarriage of justice in its closing argument. For the reasons set forth below, the judgment of the lower court is affirmed.

{¶2} On September 6, 2015, Shirley Jones ("Jones") was in her home when she heard a commotion outside her house. Tr. 80. She went to her door where she saw the two children of YJ and Little, her neighbors. *Id.* At trial, Jones testified that the children were crying and "asked [her] if [she] could call the police because their mom was bleeding and their dad was fighting their mom." Tr. 81. In response, she called 9-1-1 and reported a domestic disturbance. Tr. 82. The recording of this 9-1-1 call was later admitted into evidence and captured Jones saying, "The kids just ran over here wanting me to call. They said their dad's over there beating on their mama." Ex. 8. Patrolman Matt Boss ("Boss") responded to this report of domestic violence in progress. Tr. 51, 53. Boss later testified that approximately

-2-

ten to fifteen minutes transpired between receiving the call and reaching the reported address. Tr. 53.

{¶3} After Boss arrived on the scene, he approached YJ, who was standing outside of her home. At trial, Boss testified that YJ looked "defeated" and "in pain." Tr. 52. He observed signs of a struggle: YJ had a cut on her arm, blood on her neck and hands, and a laceration on the back of her head. Tr. 52, 55. Boss then asked YJ what had happened. Tr. 56. Boss testified at trial that YJ told him "[t]hat Larisco Little grabbed her by her hair and slammed her head into a glass dining room table." *Id*. Boss then called for medical assistance and began searching for Little. Tr. 57. YJ permitted the police to clear her house, but Little was not inside. *Id*. Boss began searching the vicinity and found Little wandering roughly one block away from YJ's home. *Id*. Boss then arrested Little. Doc. 1.

{¶4} Later that day, Little called his mother from jail on a recorded line. Tr. 121. In this conversation, Little said, "She kept on pushing my buttons, mama." Ex. 9. He then said, "I pushed her, and she hit the table, mama. That—that was a mistake." *Id*. On September 8, 2015, Little was charged with domestic violence under R.C. 2919.25(A). On April 21, 2016, Detective Kent Miller served a subpoena on YJ that ordered her to appear before the court as a witness on May 3, 2016. Tr. 29. However, YJ did not appear for the trial. Tr. 30. The prosecution proceeded by calling Boss to testify and asked Boss what YJ told him during their

initial encounter. Tr. 56. The defense objected to the admission of this evidence as hearsay. *Id.* The court, however, overruled the objection, finding the statement was nontestimonial and admissible as "either an excited utterance or a statement to Patrolman Boss for purposes of the emergency treatment of her." Tr. 111-112.

{¶5} The State then called Jones, YJ's neighbor, to testify. Tr. 79. During her testimony, the defense objected when Jones began stating what the children told her. Tr. 80. The court, however, overruled the objection and admitted the statements of the children. *Id.* Several times in his closing argument, the prosecutor referenced Jones's earlier testimony regarding what the children had said at Jones's house and related the children as saying, "Help, help, my daddy's beating up my mommy and she's bleeding; call 9-1-1." Tr. 209, 211. In the closing argument, the prosecutor also referenced records of Little's two prior convictions, which were admitted into evidence to prove an element of the charged crime. Tr. 227. Ex. 6, 7. See R.C. 2919.25(D)(4). The jury found Little guilty of domestic violence, and Little was sentenced on June 13, 2016. Doc. 71.

{¶6} On appeal, Little raises three assignments of error.

**First Assignment of Error**

**The trial court erred in admitting hearsay statements in violation of the defendant-appellant's right to confrontation.**

## Second Assignment of Error

**The verdict of the trial court was against the manifest weight of the evidence since the State of Ohio failed to prove each and every element of the crime of domestic violence beyond a reasonable doubt.**

## Third Assignment of Error

**The closing argument by the State of Ohio created a manifest miscarriage of justice violating the defendant-appellant's right to a fair trial.**

### *First Assignment of Error*

{¶7} In his first assignment of error, Little challenges the admission of hearsay into evidence in violation of his right to confrontation. While the wording of this assignment of error primarily addresses the alleged violation of Little's right to confrontation, the arguments in Little's brief also question the admissibility of these hearsay statements. For this reason, we will first consider whether the admission of the hearsay statements was proper under the rules of evidence. *State v. Dever*, 64 Ohio St.3d 401, 415, 596 N.E.2d 436 (1992).[1] We will then consider whether the admission of these statements violated Little's rights under the Confrontation Clause. *Id.*

---

[1] *Dever* was decided prior to the U.S. Supreme Court's decision in *Crawford*, which overruled the *Roberts* framework for deciding Confrontation Clause cases. *Crawford v. Washington*, 541 U.S. 36, 60, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). However, the process of determining the admissibility of hearsay statements under the rules of evidence prior to determining their acceptability under the Confrontation Clause has remained consistent. See *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 31, 57.

*Admission of Hearsay Statements*

**{¶8}** "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is typically inadmissible unless the statement falls into a hearsay exception. Evid.R. 802. "An appellate court's review of the admission of evidence is limited to a determination as to whether the trial court abused its discretion." *State v. Hawkey*, 3d Dist. Defiance No. 4-14-03, 2016-Ohio-1292, ¶ 63, quoting *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). "An abuse of discretion has been described as an unreasonable, arbitrary or unconscionable decision." *State v. Harris*, 3d Dist. Hancock No. 5-99-14, 1999 WL 797159 (Sept. 30, 1999), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

*The Testimony of Patrolman Matt Boss*

**{¶9}** The first statement Little challenges was made by YJ to Boss. At trial, Boss testified that YJ told him "[t]hat Larisco Little grabbed her by her hair and slammed her head into a glass dining room table." Tr. 56. This statement appears to have been admitted as a nontestimonial, excited utterance. Tr. 112. Excited utterances are an exception to the general rule excluding hearsay statements "because excited utterances are the product of reactive rather than reflective thinking and, thus, are believed [to be] inherently reliable." *State v. Ducey*, 10th

Dist. Franklin No. 03AP-944, 2004-Ohio-3833, ¶ 17, citing *State v. Taylor*, 66 Ohio St.3d 295, 612 N.E.2d 316 (1993). This exception covers "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2).

{**¶10**} A statement falls within the excited utterance exception and has, therefore, indicia of reliability when

> **the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over declarant's reflective faculties so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.**

*Hawkey* at ¶ 63, quoting *Potter v. Baker*, 162 Ohio St. 488, 124 N.E.2d 140 (1955).

{**¶11**} When evaluating statements under this test, "[t]here is no per se amount of time after which a statement can no longer be considered to be an excited utterance." *Taylor* at 303. Rather, "each case must be decided on its own circumstances." *State v. Duncan*, 53 Ohio St.2d 215, 219, 373 N.E.2d 1234 (1978).

"The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought." *Taylor* at 303. Further, excited utterances can be made in response to

> **questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, (3) and does not destroy the domination of the nervous excitement over the declarant's reflective facilities.**

*State v. Tebelman*, 3d Dist. Putnam No. 12-09-01, 2010-Ohio-481, ¶ 31, quoting *State v. Wallace*, 37 Ohio St.3d 87, 93, 524 N.E.2d 466 (1988).

{¶12} Here, the statement YJ made to Boss meets the four elements of an excited utterance. First, YJ did endure a startling experience. When Boss approached YJ, she had just emerged from a verbal and physical altercation. She had sustained injuries to her head, her arm, and was bleeding. Boss testified that YJ still appeared "[d]efeated," "somewhat" excited, and "in pain." Tr. 52. Second, YJ's comments were made, at most, ten to fifteen minutes after the startling event. Boss testified that he arrived at the scene of the incident within ten to fifteen minutes of receiving Jones's call. Tr. 53. We know Jones's call was placed as the incident was still unfolding since the children reported to Jones what they had just seen. Tr. 81. See *Cleveland v. Colon*, 8th Dist. Cuyahoga No. 87824, 2007-Ohio-269, ¶ 5. Third, YJ's statements were directly related to the altercation since she was telling the responding officer what had transpired. Boss said she told him that "Larisco

-8-

Little grabbed her by her hair and slammed her head into a glass dining room table." Tr. 56. Fourth, YJ's statements related her personal observations to Boss as she was the victim of the incident she described. *Id.*

{¶13} Further, there is no evidence that Boss asked leading questions. He sought only to find out what had happened. Tr. 53. Boss's interaction with YJ merely elicited what was likely already on her mind: the physical injuries she sustained and how she got them. Tr. 55-56. These statements were the result of Boss's initial interaction with YJ; this conversation occurred as Boss was determining how to procure medical assistance for YJ, whether YJ or the first responders were still in danger, and the whereabouts of the perpetrator. *Id.* At that point, it does not appear that YJ had time to reflect upon or rehearse statements for a police interrogation. Thus, we find the trial court did not abuse its discretion as these hearsay statements were admissible under Evid.R. 803(2).

*Statement of Children to Shirley Jones*

{¶14} The second challenged statement was made by Little's children to Jones. Tr. 81. On appeal, the State argues this falls within the present sense impression exception, which permits "statement[s] describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Evid.R. 803(1). This rule assumes that "statements or perceptions, describing the

event and uttered in close temporal proximity to the event, bear a high degree of trustworthiness." *State v. Dixon*, 152 Ohio App.3d 760, 2003-Ohio-2550, 790 N.E.2d 349, ¶ 12, quoting *Cox v. Oliver Machinery Co.*, 41 Ohio App.3d 28, 35, 534 N.E.2d 855 (12th Dist.1987). For this reason,

> **[t]he key to the statement's trustworthiness is the spontaneity of the statement, either contemporaneous with the event or immediately thereafter. By making the statement at the time of the event or shortly thereafter, the minimal lapse of time between the event and statement reflects an insufficient period to reflect on the event perceived—a fact which obviously detracts from the statement's trustworthiness.**

*State v. Upshaw*, 3d Dist. Logan No. 8-02-46, 2003-Ohio-5756, ¶ 7, quoting *Cox* at 35.

{¶15} In this case, the children's statements to Jones fall squarely within the present sense impression exception. According to Jones, the children "ran over" to her house, Exhibit 8; "[were] beating at the windows and doors" of her home, Tr. 80; and "[were] crying." Tr. 81. The children's statements described what they had witnessed firsthand immediately prior to arriving at Jones's door. These statements were contemporaneous with the unfolding altercation between Little and YJ. Having seen their mother bleeding and injured, these children were seeking emergency assistance and were asking Jones to "call the police." *Id.* These children did not have time to reflect upon their statements before speaking and do not appear to have had a motivation outside of helping their mother, giving these statements

-10-

compelling indicia of trustworthiness.  Thus, we find the trial court did not abuse its discretion as these hearsay statements were admissible under Evid.R. 803(1).

*Confrontation Clause Analysis*

{¶16} Next, we will determine whether either of these "statement[s]...should have been excluded under the Confrontation Clause as construed in *Crawford*." *Cleveland v. Colon*, 8th Dist. Cuyahoga No. 87824, 2007-Ohio-269, ¶ 16, citing *Crawford v. Washington*, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). See *United States v. Hadley*, 431 F.3d 484, 498 (6th Cir. 2005). "Evidence...admissible at trial as a hearsay exception...may nonetheless be inadmissible because it violates a defendant's right of confrontation." *Dever* at 415. "The question of whether a criminal defendant's rights under the Confrontation Clause have been violated is reviewed under a de novo standard." *State v. Douglas*, 3d Dist. Marion No. 9-05-24, 2005-Ohio-6304, ¶ 39, citing *United States v. Robinson*, 389 F.3d 582, 592 (6th Cir. 2004).

{¶17} The Confrontation Clause guarantees the right of defendants in criminal cases "to be confronted with the *witnesses* against him." *Crawford* at 38. Since a witness is a person who "bear[s] testimony," *Id*. at 51, quoting 2 N. Webster, An American Dictionary of the English Language (1828), "the Confrontation Clause applies only to testimonial statements." *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 59, citing *State v. Stahl*, 111 Ohio St.3d 186,

2006-Ohio-5482, 855 N.E.2d 834, ¶ 15. For testimonial hearsay to be admitted, the witness must be "unavailable to testify, and the defendant [must have] had a prior opportunity for cross-examination." *Crawford* at 54. With nontestimonial hearsay, however, "the States [have] flexibility in the development of hearsay law." *Id*. at 68.

*The Testimony of Patrolman Matt Boss*

**{¶18}** When out-of-court statements made to law enforcement are at issue, the primary purpose test applies. *State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, ¶ 28.[2] Under this test,

> **[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.**

*State v. Perkins*, 3d Dist. Seneca No. 13-10-36, 2011-Ohio-2705, ¶ 4, quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). An ongoing emergency does not necessarily end when the police arrive. *Cleveland v. Merritt*, 2016-Ohio-4693, --- N.E.3d ---, ¶ 18 (8th Dist).

---

[2] In *Siler*, the court held that the objective witness test generally applies to out-of-court statements made to people other than law enforcement. The primary purpose test, however, generally applies to situations where out-of-court statements are made to law enforcement during interrogations. *Siler* at ¶ 28-29.

{¶19} To determine whether an ongoing emergency exists, courts must "objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Michigan v. Bryant*, 562 U.S. 344, 369, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). "The court should consider the primary purpose of both the declarant and the interrogator." *State v. Diggle*, 3d Dist. Auglaize No. 2-11-19, 2012-Ohio-1583, ¶ 25, citing *Bryant* at 1160. This analysis "cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may continue." *Id.* at 1158. Further, formal questioning may suggest the emergency situation has subsided whereas informal interrogation may suggest the police were "address[ing] what they perceived to be an ongoing emergency." *Id.* at 1166. Regarding the victim, any potential injuries may shed light on his or her intentions. *Id.* at 1161. However, this "inquiry [regarding the victim's physical state] is still objective because it focuses on the understanding and purpose of a reasonable victim in the circumstances of the actual victim." *Id.*

{¶20} In this case, we find YJ's statements to Boss were nontestimonial under the primary purpose test. When Boss arrived, his primary purpose was to determine how to address what was, from his standpoint as a first responder, an ongoing emergency. See *Bryant* at 1160. Boss sought information from YJ to obtain appropriate medical assistance for her injuries, to determine whether the

-13-

threat of immediate danger had subsided, and to identify who the attacker was. Tr. 56-57. See *State v. Pettway*, 8th Dist. Cuyahoga No. 91716, 2009-Ohio-4544; *Colon v. Taskey*, 414 Fed.Appx. 735 (6th Cir. 2010). Further, this interview was informal, taking place at the location where Boss first encountered YJ and indicating Boss perceived this situation as an ongoing emergency. See *State v. Knecht*, 12th Dist. Warren No. CA2015-04-037, 2015-Ohio-4316, ¶ 25.

{**¶21**} While the victim and perpetrator were separated at the time of the interview, the ongoing emergency continued as Boss did not know whether Little was present on the scene or if the area was secure. *Id.* See *Cleveland v. Williams*, 8th Dist. Cuyahoga No. 101588, 2015-Ohio-1739; *State v. Sanchez*, 8th Dist. Nos. 93569 and 93570, 2010-Ohio-6153. Compare with *Toledo v. Green*, 2015-Ohio-1864, 33 N.E.3d 581 (6th Dist.) (holding no ongoing emergency existed when police knew exactly where the perpetrator was and the altercation had already ended); *Toledo v. Sailes*, 180 Ohio App.3d 56, 2008-Ohio-6400, 904 N.E.2d 543 (6th Dist.). Boss then cleared YJ's residence and found that Little was at large. Tr. 58. The police searched for and apprehended Little around one block away from YJ's residence. *Id.*

{**¶22**} Further, YJ's statements were made "with the primary purpose of enabling the police to 'meet an ongoing emergency,' i.e., to apprehend the person involved." *Colon* at ¶ 23. YJ was also injured and in need of medical attention. Tr.

-14-

52, 55. While these injuries were not life threatening, they do provide the context for her statements. She spoke with Boss to enable him to obtain proper medical assistance; we find it unlikely that she or any reasonable person in this situation would perceive this interaction with law enforcement as being primarily a means for police to collect statements for later use at trial.

{¶23} Altogether, the surrounding circumstances of this situation show that Boss had few alternatives to an informal interview to procure the basic information he needed to proceed responsibly. Boss appears to have obtained these statements to serve as the basis for further, responsive police action; these statements do not seem to have been taken for the primary purpose of documenting past events for later prosecution. See *Colon* at ¶ 20; *Merritt* at ¶ 13. Compare *Hammon v. Indiana*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (holding statements were testimonial where officers arrived after the emergency ceased and simultaneously questioned the spouses separately in different rooms). See *Merritt* at ¶ 13-14. For these reasons, we find admission of this statement at trial did not violate Little's right to confrontation.

*Statement of Children to Shirley Jones*

{¶24} While the primary purpose test applies to statements made to law enforcement, the Ohio Supreme Court has "adopted the 'objective-witness test' for out-of-court statements made to a person who is not law enforcement." *State v.*

*Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 161, citing *Stahl* at

¶ 36. Under this test, testimonial statements are those

> **made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177. In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations.**

*Stahl* at ¶ 36. Statements to persons outside of law enforcement are "much less

likely to be testimonial than statements to law enforcement officers." *Ohio v. Clark*,

135 S.Ct. 2173, 2180, 192 L.Ed.2d 306, 83 U.S.L.W. 4484 (2015). Further,

"[s]tatements by very young children will rarely, if ever, implicate the Confrontation

Clause." *State v. Saltz*, 3d Dist. Hancock No. 5-14-33, 2015-Ohio-3097, ¶ 34,

quoting *Clark* at 2182.[3]

{¶25} The statements Little's children made to Jones were nontestimonial.

As these children urgently cried to Jones for assistance, they were undoubtedly

thinking about helping their injured mother; we find it unlikely that their young

minds were contemplating the role their statements could play in criminal litigation.

The children merely said what was necessary to obtain assistance for their mother

---

[3] *Saltz* involved a child who was four years old at the time the hearsay statements were made. *Saltz* at ¶ 5. *Clark* involved a child who was three years old. *Clark* at ¶ 2182.

in the midst of a traumatic, emergency situation. Given that these statements were uttered to a neighbor who was not affiliated with law enforcement and by young children who were seeking help for their mother, we find that the admission of this evidence did not violate Little's right to confrontation. For these reasons, we overrule Little's first assignment of error.

*Second Assignment of Error*

**{¶26}** In his second assignment of error, Little argues that the verdict of the trial court was against the manifest weight of the evidence. To evaluate this type of challenge,

> **an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.**

*State v. Wilder*, 3d Dist. Van Wert No. 15-15-08, 2016 -Ohio- 251, 58 N.E.3d 421, ¶ 18, quoting *State v. Mendoza*, 137 Ohio App.3d 336, 738 N.E.2d 822 (3d Dist. 2000).

**{¶27}** "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Torman*, 3d Dist. Putnam No. 12-15-10, 2016-Ohio-748, ¶ 7, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one

of the syllabus. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1–11–34, 2012–Ohio–5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011–Ohio–6524, ¶ 119.

**{¶28}** Little was convicted of domestic violence. R.C. 2919.25(A) states, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." At trial, the prosecution introduced a recording of Little talking to his mother in which he said, "She [YJ] kept on pushing my buttons, mama." Ex. 9. He also said, "I pushed her, and she hit the table, mama. That—that was a mistake." *Id*. Little reveals in this tape that he knowingly chose to undertake an action that was likely to cause physical harm. The testimony of Boss and the photographic evidence of YJ's injuries after the incident indicate that Little's actions resulted in physical harm. Tr. 55. Ex. 3, 4, 5.

**{¶29}** Jones's testimony of what the children reported to her further connects Little to the injuries YJ sustained. In the 9-1-1 call, Jones states that the children "just ran over here wanting me to call. They said their dad's over there beating on their mama." Ex. 8. At trial, Jones said Little's children told her that "their mom was bleeding and their dad was fighting their mom." Tr. 81. These statements point to Little as the cause of YJ's injuries. The testimony of Jones also indicates that YJ was a member of Little's household under Ohio law as YJ and Little had children

together. Tr. 79-80. Lastly, the prosecution introduced records of Little's two prior convictions for domestic violence to establish that Little "has…been convicted of two or more offenses of domestic violence." Ex. 6, 7. See R.C. 2919.25(D)(4). Based on this evidence, we find that the jury could reasonably have found the testimony of Jones and Boss to be credible and, with Little's admission to his mother, could reasonably have found Little to be guilty. Thus, the second assignment of error is overruled.

*Third Assignment of Error*

{¶30} In his third assignment of error, Little argues that statements in the prosecution's closing argument constituted a manifest miscarriage of justice. In general, "the State has 'wide latitude' in its closing argument." *Call* at ¶ 15, citing *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984). "The State is largely free to comment on 'what the evidence has shown and what reasonable inferences may be drawn therefrom.'" *Id*., quoting *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990).

> **The test for prosecutorial misconduct during closing argument is [1] whether the remarks made by the prosecutor were improper and, if so, [2] whether they prejudicially affected a substantial right of the accused. *State v. Siefer*, 3d Dist. No. 5–09–24, 2011–Ohio–1868, ¶ 46, citing *White*, 82 Ohio St.3d at 22, 693 N.E.2d 772.**

*State v. Klein*, 3d Dist. Union No. 14-12-09, 2013-Ohio-2387, ¶ 60. For this determination,

> **an appellate court should consider[four factors:] (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant.** *Johnson* **at ¶ 87, quoting** *State v. Braxton***, 102 Ohio App.3d 28, 41, 656 N.E.2d 970 (8th Dist.1995).**

*State v. Potts*, 3d Dist. Hancock No. 5-16-03, 2016-Ohio-5555, ¶ 84. "We evaluate the allegedly improper statements in the context of the entire trial." *Klein* at ¶ 60, citing, *State v. Treesh*, 90 Ohio St.3d 460, 464, 739 N.E.2d 749 (2001), citing *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993).

> **An improper comment does not affect a substantial right of the accused if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments.** *Id.***, citing** *State v. Smith***, 14 Ohio St.3d 13, 15, 470 N.E.2d 883, (1984).**

*Klein* at ¶ 60. "To establish prejudice, a defendant must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different." *State v. Liles*, 3d Dist. No. 1-14-61, 2015-Ohio-3093, ¶ 31, quoting *State v. Porter*, 4th Dist. Meigs No. 10CA15, 2012–Ohio–1526, ¶ 20, citing *State v. Landrum*, 53 Ohio St.3d 107, 112, 559 N.E.2d 710, (1990). "Unless the statement made by the prosecutor in argument to a jury is so misleading or untruthful that the defendant's rights are prejudiced, which deprives him of a fair and impartial trial, the claimed error cannot be considered prejudicial." *State v. Singleton*, 11th Dist. Lake No. 2002–L–077, 2004-Ohio-1517, quoting *State*

*v. Daugert*, 11th Dist. No. 89–L–14–091, 1990 WL 94835 (June 29, 1990) (citations omitted).

**{¶31}** If the defense does not object during closing arguments, then "all but plain error" is waived. *State v. Fairley*, 3d Dist. Hancock No. 5-03-41, 2004-Ohio-2616, ¶ 23. Under Crim.R. 52(B), a finding of plain error "requires that there be a deviation from a legal rule, the error be an 'obvious' defect in the trial proceedings, and the error must have affected a defendant's 'substantial rights.'" *Id.*, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, 2002–Ohio–68. "We recognize plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Call* at ¶ 17, quoting *State v. Landrum* (1990), 53 Ohio St.3d 107, 559 N.E.2d 710.

**{¶32}** "Accordingly, plain error exists only in the event that it can be said that 'but for the error, the outcome of the trial would clearly have been otherwise.'" *Klein* at ¶ 58, citing *State v. Biros*, 78 Ohio St.3d 426, 431, 678 N.E.2d 891 (1997). "Thus, prosecutorial misconduct constitutes plain error only if it is clear that the defendant would not have been convicted in the absence of the improper comments." *Call* at ¶ 17, citing *State v. Slagle*, 65 Ohio St.3d 597, 606, 605 N.E.2d 916 (1992); *State v. Johnson*, 46 Ohio St.3d 96, 102, 545 N.E.2d 636 (1989).

**{¶33}** Little's first argument alleges the State engaged in prosecutorial misconduct by misstating the statements that Little's children made to Jones. At

trial, Jones testified in court that Little's children told her "their mom was bleeding and their dad was fighting their mom." Tr. 81. On the 9-1-1 recording admitted into evidence, Jones stated, "The kids just ran over here wanting me to call. They said their dad's over there beating on their mama." Ex. 8. In closing arguments, the prosecutor referenced these statements on five occasions. Tr. 209, 211, 212, 227. He related Jones as saying the children exclaimed to her, "Help, help, my daddy's beating up my mommy and she's bleeding; call 9-1-1." Tr. 209.

{¶34} Considering the four factors from *Braxton*, we find that the prosecutor's comments in closing arguments do not constitute prosecutorial misconduct. First, the prosecutor's remarks appear to be a mere misstatement that conflates Jones's in-court testimony and Jones's remarks on the 9-1-1 recording. Both of these statements had been admitted earlier by the court at trial, and the jury was permitted to consider both statements as evidence. Tr. 81-82. The prosecutor's imprecision was not misleading or prejudicial. Second, the defense did not object to these misstatements during closing arguments, waiving "all but plain error." *Fairley*, 3d Dist. Hancock No. 5-03-41, 2004-Ohio-2616, ¶ 23. Third, although the court did not issue an instruction specifically addressing these remarks, the court gave a jury instruction that explained the closing arguments were not evidence. Tr. 231. The jurors had the exact quotations in evidence as they made their determination. We are to presume the jurors acted in accordance with these

-22-

instructions. *Potts* at ¶ 89, quoting *State v. Vanloan*, 12th Dist. Butler No. CA2008-10-259, 2009-Ohio-4461, 2009 WL 2762756, ¶ 38 (citations omitted). Finally, the prosecution presented a variety of evidence to connect Little to YJ's injuries. See *Potts* at ¶ 86, citing *State v. Williams*, 1st Dist. Hamilton No. C-040747, 2005-Ohio-6772, ¶ 28. This included the statements of YJ to Boss, the statements of Little's children to Jones, and photographic evidence. Tr. 56, 81. Ex. 8. The evidence also includes Little's recorded admission that he "pushed [YJ], and she hit the table." Ex. 9. See *State v. Behun*, 11th Dist. Portage No 1880, 1988 WL 142040 (Dec. 30, 1988) (holding there was no reversible error where the trial court overruled defense's objection during closing arguments after the prosecution misquoted admitted statements; the appeals court found the jury would have found defendant guilty absent the misquotations).

**{¶35}** Even if the comments were improper, we cannot see how the absence of these remarks would have changed the jury's determination given the larger context of the trial and the evidence presented by the prosecution. While Little establishes that these remarks were inexact, he does not explain how exact quotations in the State's closing argument would have affected the verdict. Thus, the defense does not demonstrate how these remarks prejudiced the defendant. See *Potts* at ¶ 86, citing *State v. Williams*, 1st Dist. Hamilton No. C-040747, 2005-Ohio-6772, ¶ 28. Even if these misstatements were removed from closing arguments,

there was overwhelming evidence from which the jury could have found Little guilty. Consequently, these remarks did not affect the defendant's substantial rights and do not amount to plain error. See *State v. Steele*, 12th Dist. Butler No. CA2003–11–276, 2005-Ohio-943, ¶ 64.

{¶36} Little's second allegation of prosecutorial misconduct surrounds the prosecution's use of the records of Little's two prior convictions during the state's closing arguments. In closing arguments, the prosecutor stated, "You saw the evidence—the entries. He's got two prior convictions for Domestic Violence. All the elements have been met." Tr. 227. Under R.C. 2919.25(D)(4), the state had to prove that the defendant had two prior convictions for domestic violence or a similar crime listed in 2919.25(D)(3) to obtain a felony conviction. See *State v. Allen*, 29 Ohio St.3d 53, 54-55, 506 N.E.2d 199 (1987); *State v. Gordon*, 28 Ohio St.2d 45, 276 N.E.2d 243 (1971). The statement itself shows he is referencing these two prior convictions to show "[a]ll the elements have been met." Tr. 227. Thus, this statement was not improper. *State v. McCoy*, 5th Dist. Stark No. 2001CA00125, 2002 WL 571686 (April 15, 2002). Compare *State v. Henton*, 121 Ohio App.3d 501, 700 N.E.2d 371, (11th Dist.1997). Further, the court issued a jury instruction that stated

> **Evidence was received that the defendant was previously convicted of Domestic Violence. The evidence was received because the prior convictions are an element of the offense charged. It was not**

-24-

**received, and you may not consider it, to prove the character of the defendant in order to show that he acted in conformity with that character.**

Tr. 236. Since the prosecution had to present evidence of two prior convictions to elevate the domestic violence charged to a felony conviction, this statement did not prejudice Little's substantial rights and does not constitute plain error. We, therefore, overrule the third assignment of error.

{¶37} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Allen County is affirmed.

*Judgment Affirmed*

**SHAW, P.J. and PRESTON, J., concur.**

**/hls**