[Cite as *State v. Hoskinson*, 2022-Ohio-1203.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
VAN WERT COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

ANTHONY HOSKINSON,

    DEFENDANT-APPELLANT.

CASE NO. 15-21-10

O P I N I O N

Appeal from Van Wert County Common Pleas Court
Trial Court No. CR-20-02-042

Judgment Affirmed

Date of Decision:  April 11, 2022

APPEARANCES:

    *Gene P. Murray* for Appellant

    *Kelly J. Rauch* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Anthony J. Hoskinson ("Hoskinson") appeals the judgment of the Van Wert County Court of Common Pleas, alleging that the trial court erred by admitting the testimony of one of the State's experts and by admitting the State's expert report. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On the evening of February 14, 2020, Michael Semer ("Semer") was working at Brookside Convenience Drive Thru ("Brookside") when he was approached by a man wearing a flannel jacket, white tennis shoes, a black face covering, and a hat. Tr. 200-201, 202, 206. Semer testified that the face covering "looked * * * made out of a stocking hat with the eyes just ripped out." Tr. 206. He testified that this man had a "blue razor blade knife" and said "to give him the money" from the register. Tr. 202, 203, 207. Ex. 56. Semer then "gave him the money and [the man] * * * walked out the door." Tr. 209. After the man left, Semer called the police. Tr. 209.

{¶3} When the police arrived, Semer gave them a description of the man's height, weight, voice, and apparel. Tr. 206. Ex. 56. He indicated to the police that the man "exited out the south side of the building * * *." Tr. 279. Semer also showed the police the video footage from the Brookside's security cameras. Tr. 204, 210. In the footage, the police noticed that the man had a tattoo on his neck

and that his hat had lettering on it. Tr. 226, 237. Ex. 48, 49, 53. Not all of the lettering was decipherable in the footage, but the police were able to determine that the first portion of the lettering on the hat said "Wells." Tr. 226. Ex. 53. Further, some other security camera footage also showed that a purple PT Cruiser appeared near the entrance of the store "within a minute" of "the suspect enter[ing] the building * * *." Tr. 232-233.

{¶4} Deputy James Roehm ("Deputy Roehm") of the Van Wert Sheriff's Office came to the store with a canine to help locate the suspect. Tr. 278. The canine led Deputy Roehm to a piece of black fabric on the ground. Tr. 238, 284. On closer inspection, this fabric "was determined to be a cut off or torn off T shirt sleeve" that was "black in color." Tr. 238. Ex. 14. The police believed that the suspect may have used this fabric as a mask during the robbery. Tr. 238.

{¶5} The police then located a purple PT Cruiser in front of a trailer that was in a mobile home lot behind Brookside. Ex. 45. Tr. 239, 287. This trailer was a short distance from where the black fabric was discovered on the ground. Tr. 238-239. Ex. 45. When a person began driving the PT Cruiser away from trailer, the police made contact with the driver. Tr. 288. Shortly thereafter, Hoskinson came to the door of the trailer. Tr. 243, 291. He fit the description that Semer had provided to the police of the suspect in the robbery. Tr. 243. Ex. 56.

{¶6} Deputy Roehm was allowed to enter the trailer. Tr. 246, 294. As he walked around the trailer, he discovered a "rolled up flannel shirt" and white shoes

that appeared to match the apparel worn by the suspect in the Brookside security camera footage. Tr. 294-295. Ex. 25, 26, 46. At this point, Hoskinson was detained by the police. Tr. 245-246, 295-296. After obtaining a search warrant, the police located a knife that matched Semer's description in the trailer. Tr. 250. Ex. 23-24, 56. They also found a hat with the words "Wells Brothers" on it. Tr. 252. Ex. 27-28, 56. The police also found a "ripped up black cloth that was on the passenger seat" of the PT Cruiser. Tr. 253, 297. Ex. 29-30.

{¶7} On March 5, 2020, Hoskinson was indicted on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree; one count of aggravated robbery in violation of R.C. 2911.01(B)(1), a felony of the first degree; and one count of attempted escape in violation of R.C. 2921.34(A)(1), a felony of the third degree. Doc. 5. The indictment also included repeat violent offender specifications pursuant to R.C. 2941.149(A). Doc. 5.

{¶8} The black tee shirt sleeve that was found in the vicinity of Brookside was sent to the Ohio Bureau of Criminal Investigation ("BCI") for DNA testing. Ex. 54. Lindsey Nelsen-Rausch ("Nelsen-Rausch") performed testing on this black fabric. Tr. 491-492. She determined that DNA was present on the fabric from at least three contributors and concluded that Hoskinson was a "major contributor" of the DNA found on the black fabric. Tr. 494. Ex. 54.

{¶9} However, Nelsen-Rausch was going to be unavailable to testify on the original trial date. Tr. 501, 504. For this reason, another BCI analyst, Stacy Violi

("Violi"), tested the black fabric and wrote a report on her findings so that she could testify in the place of Nelsen-Rausch. Tr. 501. Violi's report indicated that it was written to replace Nelsen-Rausch's prior report. Tr. 500-501. Subsequently, the date of Hoskinson's trial was changed, and Nelsen-Rausch was available to testify at trial. Doc. 35, 48, 74, 85, 103, 104, 130. Tr. 509.

{¶10} On August 16, 2021, Hoskinson's jury trial began. Tr. 110. The State called Nelsen-Rausch as a witness to testify about her findings. Tr. 484. On cross-examination, defense counsel questioned Nelsen-Rausch as to whether her report could "be valid if the subsequent reviewer['s report] replace[d] it in its entirety." Tr. 502. Nelsen-Rausch explained that her conclusions were not contradicted by Violi's findings and were still valid, even though a subsequent report had been prepared. Tr. 502, 503. After Nelsen-Rausch's testimony, the trial court admitted her report into evidence over the Defense's objections. Tr. 510. Ex. 54. On August 19, 2021, the jurors returned verdicts of guilty on the charges against Hoskinson. Doc. 163, 165, 166. On September 29, 2021, the trial court issued its judgment entry of sentencing. Doc. 173.

*Assignment of Error*

{¶11} Hoskinson filed his notice of appeal on October 19, 2021. Doc. 187. On appeal, he raises the following assignment of error:

> **In a fundamental and substantial denial of due process of law and of the right to confrontation of witnesses and of the right to a fair and impartial jury trial, it was reversible error for the trial court**

**to allow a State DNA forensic scientist to testify about her highly prejudicial conclusions reached in her examination and analysis of material evidence in this case, and then for the court to allow the admission into evidence, as a State's exhibit, said DNA forensic scientist's written report of her highly prejudicial conclusions against the defendant-appellant, when in fact the said DNA forensic scientist witness admitted that her DNA analysis report had been replaced in its entirety by a subsequent analysis and report from a different State DNA forensic scientist, thereby resulting in reversible harmful error in a case in which the police officers and the detective did not investigate nor look for an unknown subject whose DNA was allegedly in the material evidence, and wherein at trial, a photo analysis comparison expert for the Defense, did determine discrepancies between tattoos on the neck of the defendant-appellant, and tattoos on the neck of the actual robber.**

Hoskinson argues that the admission of the evidence provided by Nelsen-Rausch violated his rights under the Confrontation Clause.

*Legal Standard*

{¶12} The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees the right of an "accused * * * to be confronted with the witnesses against him * * *." Sixth Amendment to the U.S. Constitution. "[A] witness is a person who 'bear[s] testimony.'" *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 17 (3d Dist.), quoting *Crawford v. Washington*, 541 U.S. 36, 51, 124 S.Ct. 1354, 1364, 158 L.Ed.2d 177 (2004), quoting 2 N. Webster, An American Dictionary of the English Language (1828). For this reason, "the Confrontation Clause applies only to testimonial statements." *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 59.

{¶13} Further, the Confrontation Clause applies to testimonial statements that are made out-of-court." *Crawford* at 50.

> **As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness.**

*Bullcoming v. New Mexico*, 564 U.S. 647, 651, 131 S.Ct. 2705, 2713, 180 L.Ed.2d 610 (2011). *See Crawford* at 59. This has been held to include testimonial statements that were made in written reports. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324, 129 S.Ct. 2527, 2540, 174 L.Ed.2d 314 (2009); *Bullcoming* at 651. *See also Williams v. Illinois*, 567 U.S. 50, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012).

*Legal Analysis*

{¶14} At trial, Hoskinson asserted that Violi's report replaced and invalidated Nelsen-Rausch's prior report. If Nelsen-Rausch's report had been invalidated in the manner suggested by Hoskinson, then the only remaining valid report was Violi's report. Following this assumption, Hoskinson argues that Nelsen-Rausch should not have been called to testify about the DNA analysis performed on the black fabric because the only remaining forensic report was composed of statements produced by a different analyst. Thus, Hoskinson seems to assert that Nelsen-Rausch's testimony violated the Confrontation Clause because she could not testify about the statements in a forensic report that was produced by another analyst.

{¶15} However, the evidence in the record indicates that Hoskinson's entire argument rests on the errant assumption that Nelsen-Rausch's report was invalidated by Violi's report. At trial, Nelsen-Rausch indicated that Violi also produced a report in this case because she (Nelsen-Rausch) "was going to be out of town" on the dates when the trial was originally scheduled. Tr. 501, 509. She stated that her report was "still * * * technically reviewed and administratively reviewed and [was] * * * still valid." Tr. 502. On redirect, Nelsen-Rausch testified that Violi simply "re-analyzed the results" and "reevaluated" the evidence. Tr. 504, 509. This was the standard procedure when "a testing analyst * * * is not available for a particular time to testify." Tr. 509. Further, Nelsen-Rausch testified that "the DNA conclusions were the same" in both reports. Tr. 504.

{¶16} While Violi's report stated that it "replaced" Nelsen-Rausch's prior report, the evidence in the record clearly indicates that this means Violi's report was prepared for use in place of Nelsen-Rausch's report in the event that Nelsen-Rausch was unavailable to testify. There is no indication in the record that Violi's report retracted, abrogated, or invalidated the findings in Nelsen-Rausch's report. Given the facts of this case, we need not determine and, therefore, decline to determine whether Nelsen-Rausch's report contained statements that were testimonial in nature. Regardless of whether the forensic report contained testimonial statements, the analyst who prepared the forensic report that was admitted into evidence

testified at trial on direct and cross-examination. Thus, Hoskinson had an opportunity to confront the expert witness who produced this forensic report.

{¶17} In conclusion, there is no indication that Nelsen-Rausch's forensic report was invalidated by the preparation of a second report. Thus, in this case, the State called the analyst who wrote a valid forensic report that was admitted into evidence to testify as a witness at trial. The Defense was able to question this analyst on cross-examination and on recross-examination. For this reason, we conclude that Hoskinson has failed to demonstrate that his right to confront the witnesses against him was violated in any way by Nelsen-Rausch's testimony or by the admission of her forensic report into evidence. Accordingly, Hoskinson's sole assignment of error is overruled.

*Conclusion*

{¶18} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Van Wert County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**MILLER and SHAW, J.J., concur.**

**/hls**