[Cite as *State v. Nicholson*, 2019-Ohio-1058.]

COURT OF APPEALS
MORGAN COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 18 AP 0005 |
| LLOYD NICHOLSON | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No.  17 CR 2


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      March 25, 2019


APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

JANNA C. WOODBURN               CHANDRA L. ONTKO
ASSISTANT PROSECUTOR            665 Southgate Parkway
19 East Main Street             Cambridge, Ohio  43725
McConnelsville, Ohio  43756

*Wise, J.*

{¶1} Appellant Lloyd D. Nicholson appeals his conviction for felonious assault in the Court of Common Pleas, Morgan County. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2} Appellant and A.T., the victim in this matter, have known each other for approximately twenty years. On or about December 30, 2016, A.T. went to appellant's residence, planning to purchase Xanax pills. A.T., who has admitted to an addiction to Xanax, opiates, and alcohol, later testified she was "foggy" about who drove her there, and she indicated that she could have been drinking at the time. Tr. at 109.

{¶3} A.T. and appellant got into a verbal argument at some point, but appellant eventually went into his bedroom to lie down. A.T., having purchased about twelve Xanax pills, then left the residence and walked to the nearby residence of Cliff Nicholson, appellant's brother. She had been there for about thirty minutes when appellant showed up. She later testified that "it's kind of spotty. I was messed up." Tr. at 93. Another argument developed at some point concerning appellant's accusation that A.T. had stolen some of his Xanax. A.T. subsequently testified that appellant struck her with his fist in the side of her face, recalling: "I think it knocked me out. I'm pretty sure. I don't remember anything until hearing his brother yell, and I got up off the floor and ran out of the house." Tr. at 94.

{¶4} A.T. headed toward the residence of her friend Teresa R., who lived nearby. Appellant came over later, acting agitated and cursing about A. T. Teresa R. finally forced him out of her house. A.T. was then given a ride to her sister's residence.

{¶5}   The next day, A.T. was taken to the hospital. An X-ray examination allegedly found nineteen orbital fractures around her eye socket and a blood clot over and under her eye. A.T. was then sent by ambulance to Grant Medical Center in Columbus.

{¶6}   Matt Cook, appellant's parole officer, became aware of the incident and contacted Deputy Brian West of the Morgan County Sheriff's Office.[1] The two officers then went to appellant's residence and spoke with him. Cook thereupon arrested appellant, transported him to the sheriff's office, and determined that appellant tested positive for methamphetamine. Tr. at 142.

{¶7}   Deputy West contacted A.T. by telephone at the Grant Medical Center and collected more information about the incident. West later testified that appellant admitted he had been in an argument with A.T. about medication allegedly being stolen. Appellant told him that he had gotten angry and "shoved her down *** and she hit her head on either a chair or the floor." Tr. at 129. Appellant told West on December 31, 2016 that he had recently smoked methamphetamine; however, appellant appeared coherent to the deputy. Tr. at 130.

{¶8}   Deputy West later that day met in person with A.T. and obtained verbal and written statements from her. He also took photographs of her injuries. Further investigation took place, as further detailed *infra*.

{¶9}   On January 12, 2017, appellant was indicted on one count of felonious assault, R.C. 2903.11(A)(1), a felony of the second degree. Appellant pled not guilty, but he was not able to post bond. The matter proceeded to a jury trial on August 29, 2017.

---

[1]   Cook subsequently noted that appellant was on felony supervision based on a Washington County case, but was living in Morgan County. *See* Tr. at 139.

{¶10} After hearing the evidence and arguments of counsel, the jury found appellant guilty of felonious assault.

{¶11} Appellant was thereafter sentenced to seven years in prison, with jail-time credit based on his date of arrest. He was also fined $5,000.00 and ordered to pay the costs of the action, to include court-appointed attorney fees. Appellant was further provided notification concerning post-release control.

{¶12} Appellant filed a delayed notice of appeal on May 24, 2018. The State of Ohio filed a response on June 1, 2018, indicating it did not oppose the delay. This Court granted appellant's request for leave to file a delayed appeal on June 12, 2018.

{¶13} "I. THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION."

I.

{¶14} In his sole Assignment of Error, appellant contends his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

### *Sufficiency of the Evidence*

{¶15} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶16} Appellant herein was convicted of one count of felonious assault under R.C. 2903.11(A)(1), which states: "No person shall knowingly *** [c]ause serious physical harm to another or to another's unborn."

{¶17} Pursuant to R.C. 2901.01(A)(5), "serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶18} During the trial in the present case, Deputy West recalled his observations of the injuries to A.T.'s right eye, which was "severely swollen, blood in her eye." He further noted her eye area was "bruised really bad." Tr. at 130. This testimony was buttressed by photo exhibits. He also indicated she was "very shaken," "scared" and "crying." Tr. at 132. Deputy West indicated he has been employed in law enforcement for seven years. He has investigated "dozens" of cases involving assaults and crimes of violence and has received periodic training in those areas. Tr. at 132-133.

{¶19} Appellant emphasizes that Deputy West also did not speak with any medical professionals at the hospital, did not request or review any medical records, and did not get statements from any paramedics or hospital personnel. He also points out that A.T. did not follow up on her recommended therapy, but he concedes she told the jury that she did not have medical insurance or transportation to appointments. *See* Tr. at 98.

{¶20} However, Teresa, to whom A.T. had gone for help, testified that A.T. told her appellant had "hit her and then he started banging her face off the floor." Tr. at 153. Teresa also noted that when A.T. came to her residence, she was "really badly scared, shaking" and "just darting *** almost like she was waiting for [appellant] to walk in." Tr. at 152.

{¶21} A.T. herself testified at trial that her face, particularly in the area of her nose and upper lip, was numb for about three or four months after the incident. Tr. at 99. She also indicated that at time of trial was still getting frequent headaches. Tr. at 99-100. A.T. learned that she had nerve damage, but she did get feeling back in her face. Tr. at 102. Nonetheless, A.T. recalled that her face swelled up and "hurt pretty bad" for a few months, and that it was the worst pain she had ever experienced besides childbirth. Tr. at 103.

{¶22} We have recognized in the civil context that "[p]ain and suffering are subjective feelings, [and] the injured person's testimony is the only direct proof of such damages * * *." *Burton v. Dutiel*, 5th Dist. No. 14-CA-00024, 2015-Ohio-4134, 43 N.E.3d 874, ¶ 91, citing *Youssef v. Jones,* 77 Ohio App.3d 500, 602 N.E.2d 1176 (6th Dist. Lucas 1991). In a criminal case, the State need not present expert medical testimony to establish the element of serious physical harm. *See State v. Scott*, 4th Dist. Washington No. 15CA2, 2015-Ohio-4170, ¶ 24. In addition, Ohio courts have also determined that "serious

physical harm" exists where the injuries caused the victim to seek medical treatment. *Id.* at ¶ 23, citing *State v. Muncy,* 4th Dist. Scioto No. 11CA3434, 2012–Ohio–4563, ¶ 23.

**{¶23}** We also note that appellant admitted to Parole Officer Cook that he had shoved A.T., and that she may have struck her face on a chair, although he denied hitting her. *See* Tr. at 141, 143. Ohio courts have held that it is a foreseeable consequence for someone to fall to the ground after being punched in the head or pushed. *See State v. Benson*, 8th Dist. Cuyahoga No. 106214, 2018-Ohio-2235, ¶ 21. Thus, even assuming *arguendo* the jurors were not provided with sufficient proof of a punch to the head by appellant, reasonable minds could have also determined that appellant's violent act of pushing ultimately resulted in serious harm to A.T.

**{¶24}** Therefore, upon review of the record and transcript in a light most favorable to the prosecution, we find that reasonable finders of fact could have found appellant guilty of felonious assault, beyond a reasonable doubt.

<em>Manifest Weight</em>

**{¶25}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See also*, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶26}** Appellant's primary argument as to manifest weight in the *case sub judice* is that A.T.'s memory of the event was "kind of hazy" due to her drug and/or alcohol use that night. A.T. was unable to recall whether or not she used any other illegal drugs that evening, but she knew she was "messed up." Tr. at 113, 116-117. A.T. also later acknowledged that she has been back to appellant's house since the incident to visit. Tr. at 120. Also, as indicated previously, appellant challenges the lack of medical documentation of injuries, and he faults Deputy West's decision not to go to Cliff's house, the site of the altercation, to investigate if there was "anything tussled around." *See* Tr. at 134-135.

**{¶27}** However, upon full consideration of appellant's foregoing claims against the backdrop of the entire case, we do not conclude that this is the rare case in which the evidence "weighed heavily" against appellant's conviction. The jury apparently chose to believe A.T., in conjunction with other prosecution evidence, despite the recollection issues tied to her own substance use. We hold the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's conviction for felonious assault be reversed and a new trial ordered.

**{¶28}** Appellant's sole Assignment of Error is therefore overruled.

**{¶29}** For the reasons stated in the foregoing, the decision of the Court of Common Pleas, Morgan County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.

JWW/d 0313