[Cite as *State v. Brown*, 2019-Ohio-3486.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2018CA00120 |
| | : | |
| JOSEPH D. BROWN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Stark County Court of
                               Common Pleas, Case No. 2018CR0303

JUDGMENT:                      AFFIRMED

DATE OF JUDGMENT ENTRY:        August 26, 2019

APPEARANCES:

For Plaintiff-Appellee:                     For Defendant-Appellant:

JOHN D. FERRERO, JR.                        JACOB T. WILL
STARK CO. PROSECUTOR                        54 E. Mill St., Ste. 400
KRISTINE W. BEARD                           Akron, OH 44308
110 Central Plaza South, Ste. 510
Canton, OH 44702-1413

*Delaney, J.*

{¶1}   Appellant Joseph D. Brown appeals from the July 13, 2018 judgment entries of conviction and sentence, incorporating the July 3, 2018 judgment entry overruling his motion to suppress, of the Stark County Court of Common Pleas.  Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2}   This matter arose around 1:00 a.m. when Jane Doe called 911 to report she was assaulted by appellant, her live-in boyfriend.  Canton police were on the scene within three minutes.  Officers responded to an apartment building on 15th Street N.W. and found Jane sitting on the front steps of the multi-unit building, holding a towel to her eye.

{¶3}   Ptl. Robert Huber testified he could see the "substantial" injury to Jane's eye as he exited his cruiser, twenty feet away from where she was sitting.  Jane told officers she had been living with appellant since she was released from jail a short time before.  On this night, appellant was on the phone when Jane asked him a question.  Appellant became angry and struck her once in the face with a closed fist, knocking her to the ground.

{¶4}   Officers observed blood running down Jane's face and requested medics to the scene because Jane was obviously seriously injured.  A sergeant arrived on the scene and photographed her injuries.  Officers described Jane as distraught, crying, and breathing heavily.  Her eye was swollen and beginning to bruise.

{¶5}   A paramedic evaluated Jane's injuries.  He testified at trial and said Jane had traumatic physical injuries to her face which required immediate medical attention.  The left side of her face was severely bruised and swollen.  Her left eye was swollen

almost completely shut, and the eyeball itself was injured and bleeding. She had a 1-centimeter laceration to her eyebrow. Her nose and jaw were also swollen and her left pupil was dilated. The injuries were consistent with Jane's statement that she was struck hard in the eye with a closed fist.

{¶6} Jane had an "alert & oriented" score of three, indicating she was somewhat dazed. When asked whether she was intoxicated, the paramedic testified she had a slight odor of an alcoholic beverage and told him she had taken one prescription Xanax earlier in the day; he did not believe her to be under the influence. He noted she was as likely to be confused from the traumatic injury. Jane was transported to Mercy Medical Center for further treatment.

{¶7} Jane spoke to police at the scene and provided appellant's name and the number of the apartment he was in. Officers knocked on the door but no one answered. Jane told them that if the door was locked, he was definitely inside. The apartment had only one door, and it was on an upper floor, making it unlikely appellant had exited the building unseen. Officers also noted they were on the scene within three minutes and had every reason to believe appellant was still inside.

{¶8} Upon the arrival of the sergeant, officers set up a perimeter around the apartment building, knocked loudly on the door, and advised anyone inside this was a felony arrest. The sergeant approved a forced entry and officers entered the apartment. They found appellant lying in bed and no one else present. Appellant was asleep or pretending to be asleep. Police awakened appellant, Mirandized and arrested him. Appellant at first claimed he didn't know who Jane was, and then denied hitting her. Officers noted an odor of an alcoholic beverage emanating from appellant.

{¶9}   Appellee's evidence included photos of Jane from the night of the assault, medical reports from Mercy Medical Center, and the paramedic's written report.

{¶10} The parties stipulated to the fact that Jane Doe died from unrelated causes prior to appellant's prosecution in the instant case.

{¶11} Appellant was charged by indictment with one count of felonious assault pursuant to R.C. 2903.11(A)(1), a felony of the second degree [Count I],  and one count of domestic violence pursuant to R.C. 2919.25(A), a felony of the third degree [Count II].[1]

{¶12} Appellant entered pleas of not guilty and filed a motion to suppress Jane Doe's statements to police in the early morning hours of February 6, 2018, asserting that admission of those statements would constitute a violation of the Confrontation Clause. Appellee responded with a memorandum in opposition.  The trial court overruled the motion to suppress via a judgment entry dated June 22, 2018 following an evidentiary hearing.

{¶13} The matter proceeded to trial by jury.  Appellant moved for a judgment of acquittal at the close of appellee's evidence and the motion was overruled.  Appellant was found guilty as charged.  The trial court merged the offenses of felonious assault and domestic violence and sentenced appellant to a single prison term of four years.

{¶14} Appellant now appeals from the judgment entry of conviction and sentence dated July 13, 2018.

{¶15} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

---

[1] Appellant has stipulated throughout these proceedings that he has two or more prior domestic violence convictions, thereby enhancing the penalty level of the instant offense to a felony of the third degree.

{¶16} "I.    THE DEFENDANT'S CONVICTION[S] FOR ONE COUNT OF FELONIOUS ASSAULT AND ONE COUNT OF DOMESTIC VIOLENCE WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶17} "II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS."

**ANALYSIS**

I.

{¶18} In his first assignment of error, appellant argues his convictions are against the manifest weight and sufficiency of the evidence.  We disagree.

{¶19} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.  The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶20} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility

of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶21} Appellant was found guilty of one count of felonious assault pursuant to R.C. 2903.11(A)(1)[2] and one count of domestic violence pursuant to R.C. 2919.25(A).[3] Appellant stipulated to "at least" two prior convictions of domestic violence. He argues on appeal that appellee presented insufficient evidence of "serious physical harm," which is defined by R.C. 2901.01(A)(5):

> "Serious physical harm to persons" means any of the following:
>
> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

---

[2] R.C. 2903.11(A)(1) states, "No person shall knowingly * * * [c]ause serious physical harm to another * * *[.]"

[3] R.C. 2919.25(A) states, "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶22} We find the trial record is replete with evidence of Jane's serious injury, specifically, physical harm involving some temporary, substantial incapacity—her eye is swollen completely shut and lacerated—and temporary, serious disfigurement—Jane's face is visibly significantly battered.

{¶23} Appellant states in his brief that "Notably, there were no hospital or medical records admitted at trial or put into evidence." Brief, 8. To the contrary, our review of the record includes photos of the victim's injuries, the paramedic run report, and the records of her visit to and treatment by Mercy Medical Center. Appellee's exhibits 1, 2, and 3 are photos of Jane Doe's face. The entire left side of her face is swollen. The left corner of her left eye is bandaged; the eye itself is swollen shut. Trails of blood are evident from the corner of the eye and from the eye itself. There appears to be a gash across the eyelid and eyebrow which is also bleeding.

{¶24} Appellee's exhibit 4 is a certified copy of Jane Doe's medical records from Mercy Medical Center. Under "Medical Decision Making," we note the following:

Patient presents today after she was assault by her boyfriend and was hit in the face. On exam she has significant swelling and ecchymosis around her left eye and I did have to physically open

her eyelid to view her eye because of the amount of swelling however the eye itself appears normal. * * * *. Given her injuries, there is concern for intercranial injury as well as orbital fracture or retrobulbar hemorrhage. Patient declines any imaging and just wants the wound to be repaired and to leave. She also does not want Haven. I had a long discussion with the patient about the extent of her injuries and the need to rule them out given long-term visual impairment. She does understand these and is of sound mind to decline testing. She will sign out AGAINST MEDICAL ADVICE. * * * *. (Emphasis in original).

{¶25} Under "Physician Performed Procedures," the attending physician notes sutures were applied to Doe's left lateral eyebrow and to the left lower eyelid.

{¶26} Appellee's exhibit 5 is the run report of the Canton Fire Department stating in pertinent part, "[Unit] arrived to find a 31 year 6 month old Female patient complaining of assault victim (*sic*). Patient's sign and symptoms are: swelling, bleeding, pain."

{¶27} We disagree with appellant's contention that appellee failed to present evidence of serious injury suffered by the victim. The photos are evidence of temporary, serious disfigurement, and temporary, substantial incapacity, buttressed by the medical records. The degree of harm that rises to the definition section's level of "serious" is not a precise science, especially since the statute utilizes descriptors such as "substantial," "temporary," "acute," and "prolonged." *State v. Irwin,* 7th Dist. No. 06MA20, 2007-Ohio-4996, ¶ 37. Moreover, whether physical injuries arise to the level of serious physical harm is typically a question of the weight rather than the sufficiency of the evidence. *Id.,* citing

*State v. Salemi,* 8th Dist. No. 81091, 2002-Ohio-7064, ¶ 34. In addition, Ohio courts have also determined that "serious physical harm" exists where the injuries caused the victim to seek medical treatment. *Nicholson*, supra, 2019-Ohio-1058, at ¶ 22, citing *State v. Muncy*, 4th Dist. Scioto No. 11CA3434, 2012–Ohio–4563, ¶ 23.

{¶28} Appellant argues that because Jane Doe did not testify and appellee did not present expert medical testimony, there was insufficient evidence of serious physical harm. Appellee responds that the jury had the photos of Jane's injuries, the paramedic's report, and the testimony of the first responders to rely upon. We find appellee's exhibits to constitute compelling evidence of the extent and nature of the serious physical harm sustained by the victim.

{¶29} Appellant points to no authority requiring expert testimony as to serious physical harm, and we have in fact previously held that the state need not present expert medical testimony to establish the element of serious physical harm. *State v. Nicholson*, 5th Dist. Morgan No. 18 AP 0005, 2019-Ohio-1058, ¶ 22, appeal not allowed*,* 156 Ohio St.3d 1453, 2019-Ohio-2780, 125 N.E.3d 933, citing *State v. Scott*, 4th Dist. Washington No. 15CA2, 2015-Ohio-4170, ¶ 24; see also, *State v. Driesbaugh*, 11th Dist. Portage No. 2002-P-0017, 2003-Ohio-3866, ¶ 46 [rejecting argument that expert testimony is required to establish serious physical harm]; *State v. Fahringer,* 3rd Dist. Defiance No. 4-99-14, 2000-Ohio-1741 [finding serious physical harm despite absence of victim's testimony and expert medical testimony]. Proof of "serious physical harm" does not require expert medical testimony; rather, it is an element, like any other, that the state must prove beyond a reasonable doubt. *State v. Laney*, 6th Dist. Williams No. WM-18-004, 2019-Ohio-2648, ¶ 27, citing *State v. Stansel*, 2d Dist. Clark No. 2018-CA-076, 2019-Ohio-

1906, 2019 WL 2157645, ¶ 29, *State v. Redman*, 3d Dist. Allen No. 1-15-54, 2016-Ohio-860, ¶ 24, and *State v. Petty*, 10th Dist. Franklin Nos. 11AP-716, 2012-Ohio-2989, ¶ 29.

{¶30} Appellant does not point to any authority requiring the victim's testimony as to serious physical harm, and we find the record in this case to otherwise contain sufficient evidence of the extent and seriousness of Jane Doe's injuries.

{¶31} Have viewed the probative evidence and inferences drawn therefrom in the light most favorable to appellee, we conclude any rational trier of fact could have found proof of each element of felonious assault and domestic violence beyond a reasonable doubt. We therefore find sufficient evidence to sustain appellant's convictions.

{¶32} Furthermore, upon our review of the entire record, having weighed the evidence and reasonable inferences, and considered the credibility of witnesses, we find that in resolving conflicts in the evidence, the jury did not lose its way and create such a manifest miscarriage of justice that we must reverse the convictions and order a new trial. This is not an exceptional case in which the evidence weighs heavily against conviction.

{¶33} Appellant's first assignment of error is overruled.

II.

{¶34} In his second assignment of error, appellant argues the trial court should have granted his motion to suppress. We disagree.

{¶35} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030

(1996).  A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996).  Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard.  *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶36} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal.  First, an appellant may challenge the trial court's finding of fact.  In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence.  See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991).  Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact.  In that case, an appellate court can reverse the trial court for committing an error of law.  See*, Williams*, supra.  Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress.  When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.  *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶37} In the instant case, following the suppression hearing, the trial court found that Jane Doe's statements to first responders at the scene were excited utterances pursuant to Evid.R. 803(3).  Appellant agrees the statements were excited utterances,

and therefore need not be excluded as inadmissible hearsay, but argues admission of the statements would violate the Confrontation Clause. "Evidence ... admissible at trial as a hearsay exception ... may nonetheless be inadmissible because it violates a defendant's right of confrontation." *State v. Dever,* 64 Ohio St. 3d 401, 415, 596 N.E.2d 436 (1992).

{¶38} The Confrontation Clause of the Sixth Amendment to the U.S. Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that testimonial statements of a witness who does not appear at trial may not be admitted or used against a criminal defendant unless the declarant is unavailable to testify, and the defendant has had a prior opportunity for cross-examination.

{¶39} Jane Doe died of unrelated causes without giving testimony in this matter. At the suppression hearing, appellant argued that introduction of Doe's statements to police would violate his Sixth Amendment confrontation rights as set forth in *Crawford*, supra. The trial court found Doe's statements to be non-testimonial in nature due to an ongoing emergency. The issue presented in this assignment of error is whether Doe's statements to police were testimonial in accordance with *Crawford*, supra, and therefore inadmissible pursuant to the Sixth Amendment to the United States Constitution, or whether they are nontestimonial and therefore admissible against appellant.

{¶40} A note of clarification is necessary. At the suppression hearing, appellant challenged only Doe's statements made to police. T. 36. Appellant specifically did not challenge statements made to paramedics, and did not challenge Jane Doe's statements contained in the medical records from Mercy Medical Center. T. 38. On appeal, appellant

argues generally that the trial court should have suppressed Doe's "statements made at the scene;" in light of the argument below, we interpret this to mean solely Doe's statements to police officers.

{¶41} The Confrontation Clause guarantees the right of a defendant in a criminal case "to be confronted with the witnesses against him." *Crawford* at 38. A witness is a person who "bear[s] testimony," *Id.* at 51, quoting 2 N. Webster, An American Dictionary of the English Language (1828), therefore "the Confrontation Clause applies only to testimonial statements." *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 59, citing *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 15. For testimonial hearsay to be admitted, the witness must be "unavailable to testify, and the defendant [must have] had a prior opportunity for cross-examination." *Crawford* at 54. With nontestimonial hearsay, however, "the States [have] flexibility in the development of hearsay law." *Id.* at 68.

{¶42} When out-of-court statements made to law enforcement are at issue, the primary purpose test applies. *State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, ¶ 28. Under this test,

> [s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the

interrogation is to establish or prove past events potentially relevant

to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165

L.Ed.2d 224 (2006).

{¶43} An ongoing emergency does not necessarily end when the police arrive. *Cleveland v. Merritt*, 2016-Ohio-4693, 69 N.E.3d 102, ¶ 18 (8th Dist).

{¶44} To determine whether an ongoing emergency exists, courts must "objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Michigan v. Bryant*, 562 U.S. 344, 369, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). "The court should consider the primary purpose of both the declarant and the interrogator." *State v. Diggle*, 3d Dist. Auglaize No. 2–11–19, 2012-Ohio-1583, 2012 WL 1187970, ¶ 25, citing *Bryant* at 1160. This analysis "cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may continue." *Id.* at 1158. Further, formal questioning may suggest the emergency situation has subsided whereas informal interrogation may suggest the police were "address[ing] what they perceived to be an ongoing emergency." *Id.* at 1166. Regarding the victim, any potential injuries may shed light on his or her intentions. *Id.* at 1161. However, this "inquiry [regarding the victim's physical state] is still objective because it focuses on the understanding and purpose of a reasonable victim in the circumstances of the actual victim." *Id.*

{¶45} In this case, we find Doe's statements to police were nontestimonial under the primary purpose test. When Ptl. Jones arrived at the apartment building, his primary purpose was to determine how to address an ongoing emergency from his standpoint as

a first responder. See *Bryant*, supra, at 1160. Jones sought information from Doe to obtain appropriate medical assistance for her injuries, to determine whether the threat of immediate danger had subsided, and to identify and locate the assailant. See, *State v. Little*, 3rd Dist. No. 1-16-29, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 21. Further, this interview was informal, taking place at the location where Jones first encountered Doe and indicating Jones perceived this situation as an ongoing emergency. *Little*, id.; see also, *State v. Knecht*, 12th Dist. Warren No. CA2015–04–037, 2015-Ohio-4316, ¶ 25.

{¶46} The ongoing emergency continued because police did not know if appellant was present in the apartment or if the area was secure. *Id.*, citing *Cleveland v. Williams*, 8th Dist. Cuyahoga No. 101588, 2015-Ohio-1739, 2015 WL 2165564; *State v. Sanchez*, 8th Dist. Nos. 93569 and 93570, 2010-Ohio-6153, 2010 WL 5235932.

{¶47} Doe's statements were made "with the primary purpose of enabling the police to 'meet an ongoing emergency,' i.e., to apprehend the person involved." *Colon* at ¶ 23. Doe was also injured and in need of medical attention. Upon our review of the circumstances from Doe's perspective, "we find it unlikely that she or any reasonable person in this situation would perceive this interaction with law enforcement as being primarily a means for police to collect statements for later use at trial." *Little*, supra, 2016-Ohio-8398 at ¶ 22.

{¶48} We find that Doe's statements to police arose during an informal interview to procure the basic information police needed to proceed responsibly. *Id.* Jones obtained the statements to serve as the basis for further, responsive police action; the statements were not obtained for the primary purpose of documenting past events for later prosecution. *Id.*, citing *Colon* at ¶ 20 and *Merritt* at ¶ 13.

{¶49} The trial court therefore properly overruled appellant's motion to suppress and the second assignment of error is overruled.

## CONCLUSION

{¶50} Appellant's two assignments of error are overruled and the judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Wise, John, J., concur.