[Cite as *State v. Fulker*, 2024-Ohio-388.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

ROBERT FULKER,

    DEFENDANT-APPELLANT.

CASE NO. 3-23-27

O P I N I O N

Appeal from Crawford County Common Pleas Court
Trial Court No. 22-CR-0047

**Judgment Affirmed**

**Date of Decision:  February 5, 2024**

APPEARANCES:

    *William T. Cramer* for Appellant

    *Ryan M. Hoovler* for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Robert A. Fulker ("Fulker") appeals the judgment of the Crawford County Court of Common Pleas, alleging that his convictions are against the manifest weight of the evidence. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On February 11, 2022, Lieutenant Brent Cottrill ("Lt. Cottrill") of the Crawford County Sherriff's Office initiated a traffic stop of a vehicle that had a loud exhaust. Fulker was a passenger in the vehicle. During this stop, Lt. Cottrill discovered that Fulker had an outstanding arrest warrant and directed Fulker to exit the vehicle. He then performed a protective search of Fulker's person but did not locate any weapons. A cigarette pack that contained a small amount of marijuana was discovered in Fulker's back pocket.

{¶3} After Fulker was arrested, Lieutenant Craig Moser ("Lt. Moser") arrived at the scene of the traffic stop. Lt. Cottrill asked Fulker if he had any contraband in his possession and informed him that any illegal items taken into the jail could provide grounds for additional criminal charges. Fulker was then placed in Lt. Moser's police cruiser and transported to jail. A corrections officer, Joseph Lightfoot ("Lightfoot"), took custody of Fulker at the jail to process his arrest and conduct a more thorough search of his person.

**{¶4}** During the search at the jail, Fulker took off his hoodie. At this time, a small baggie containing a crystalline substance fell to the floor. Lightfoot later reviewed the security camera footage of the search and stated that the baggie appeared to have fallen from around Fulker's waistband at the time he was removing his hoodie. This substance inside the baggie was later tested and found to be 0.05 grams of methamphetamine.

**{¶5}** On February 15, 2022, Fulker was indicted on one count of illegal conveyance of drugs of abuse onto grounds of a specified governmental facility in violation of R.C. 2921.36(A)(2), a third-degree felony. This charge formed the basis of Case No. 22-CR-0047. Fulker was subsequently indicted for aggravated possession of drugs in violation of R.C. 2925.11(A), a fifth-degree felony. This second charge formed the basis of Case No. 23-CR-0019. As these charges were related, these cases were joined together with all filings to be received in Case No. 23-CR-0047.

**{¶6}** On May 18, 2023, a jury trial was held on these charges. The State introduced video recordings of the traffic stop and the search that occurred at the jail. Fulker testified in his defense, stating that the clothes he was wearing during the search were not his and that he was unaware of the illegal drugs found in his possession. The jury returned verdicts of guilty on both charges against Fulker. The trial court issued its judgment entry of sentencing on May 22, 2023.

*Assignment of Error*

**{¶7}** Fulker filed his notice of appeal on June 21, 2023. On appeal, he raises

the following assignment of error:

> **Appellant's convictions are not supported by the weight of the evidence.**

Fulker argues that the jurors clearly lost their way in finding him guilty because he

testified at trial that the illegal drugs that were discovered did not belong to him.

*Legal Standard*

**{¶8}** In a manifest weight analysis, "an appellate court's function * * * is to

determine whether the greater amount of credible evidence supports the verdict."

*State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 73 (3d Dist.). For this reason, an

"appellate court sits as a 'thirteenth juror' * * *." *State v. Elliott*, 2022-Ohio-3778,

199 N.E.3d 944, ¶ 19 (3d Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380,

388, 1997-Ohio-52, 678 N.E.2d 541, 547 (1997).

> Appellate courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"

*State v. Randle*, 2018-Ohio-207, 104 N.E.3d 202, ¶ 36 (3d Dist.), quoting *Plott* at ¶

73, quoting *Thompkins* at 387.

**{¶9}** "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

**{¶10}** To establish a conviction for illegal conveyance of drugs of abuse onto grounds of a specified government facility in violation of R.C. 2921.36(A)(2), the State must prove that the defendant "knowingly convey[ed] * * * onto the grounds of a detention facility * * * any drug of abuse * * *." In turn, a "drug of abuse" is defined as including controlled substances. R.C. 3719.011(A). "Methamphetamine is classified as a controlled substance." *State v. Gerhart*, 9th Dist. Summit No. 24384, 2009-Ohio-4165, ¶ 13. To establish a conviction for possession of drugs in violation of R.C. 2925.11(A), the State must prove that the defendant "knowingly obtain[ed], possess[ed], or use[d] a controlled substance." R.C. 2925.11(A).

*Legal Analysis*

**{¶11}** On appeal, Fulker argues that the finding that he knowingly possessed methamphetamines within the meaning of R.C. 2925.11(A) and the finding that he

knowingly conveyed methamphetamines within the meaning of R.C. 3719.011(A) are against the manifest weight of the evidence.

**{¶12}** At trial, Lt. Cottrill testified that he "asked Fulker if he had anything illegal on him and explained to him * * * the consequences of taking anything illegal inside the jail" at the time he was placed into a police cruiser. (Tr. 107-108). Fulker was then taken to the jail where Lightfoot located the baggie of methamphetamines on the floor next to Fulker. After Fulker denied having any knowledge of these drugs, Lightfoot reviewed the security camera footage and concluded that the baggie had fallen from Fulker's waistband. On cross-examination, Lightfoot admitted that he did not see the baggie fall from Fulker's person and indicated that his conclusions were based on the video footage.

**{¶13}** Lt. Moser testified that, after the illegal drugs were discovered, he spoke with Fulker. During this interview, he pointed out that

> he [Fulker] was asked if he had anything else on him because if he brings it into the jail he'd be having an additional charge. And he [Fulker] told me he didn't know he had it and then stated that he was wearing somebody else's clothes.

(Tr. 124). At trial, Fulker testified that he found the hoodie he was wearing in a trailer that he purchased three weeks prior to his arrest. He also indicated that he had not seen these methamphetamines until he was at the jail; that he did not know about the presence of this controlled substance; and that these drugs were not his.

Fulker stated that he would have told the police about the baggie of methamphetamines if he had known about them.

**{¶14}** During a question on cross-examination, the prosecutor noted that the baggie appeared to fall from Fulker's waistband in the security camera footage while Fulker was maintaining that the baggie came from the pocket of the hoodie he was wearing at trial. In response, Fulker stated that he believed the camera footage shows that the baggie fell out of the pocket of his hoodie, though he admitted that he was not sure where the baggie was before it fell. The security camera footage was played at trial for the jurors to observe.

**{¶15}** To summarize, the State introduced video footage at trial in which a baggie of methamphetamines can be seen falling out of Fulker's clothing while he was being searched at the jail. In response, Fulker denied having any knowledge of these illegal drugs that were on his person. The jurors apparently found his denial not to be credible. As the finders of fact, the jurors were "free to believe all, some, or none" of his testimony. *State v. Houdeshell*, 3d Dist. Hancock No. 5-18-02, 2018-Ohio-5217, ¶ 39. Having examined the record, we have found no indication that the jury lost its way and returned verdicts that were against the manifest weight of the evidence. The sole assignment of error is overruled.

*Conclusion*

**{¶16}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Crawford County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**WALDICK and ZIMMERMAN, J.J., concur.**

**/hls**