[Cite as *State v. Pitman*, 2024-Ohio-5365.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

v.

DENZEL D. PITMAN,

    DEFENDANT-APPELLANT.

CASE NO. 9-24-06

O P I N I O N

Appeal from Marion County Common Pleas Court
General Division
Trial Court No. 23-CR-133

**Judgment Affirmed**

**Date of Decision: November 12, 2024**

APPEARANCES:

    *April F. Campbell* for Appellant

    *Allison M. Kesler* for Appellee

**MILLER, J.**

{¶1} Defendant-Appellant, Denzel Pitman ("Pitman"), appeals from the February 22, 2024 judgment issued by the Marion County Court of Common Pleas, following a jury trial. Pitman argues his conviction for aggravated possession of drugs was against the manifest weight of the evidence. For the reasons that follow, we affirm.

*Facts and Procedural History*

{¶2} On April 19, 2023, the Marion County grand jury indicted Pitman for aggravated possession of drugs, in violation of R.C. 2925.11(A). The charge was a fifth-degree felony because of the type of drugs (amphetamine) and amount involved.

{¶3} The charge arose from a search of Pitman's vehicle following a traffic stop. At 1:47 a.m. on March 3, 2022, Trooper Andrew Shellhouse of the Ohio State Highway Patrol ("Trooper Shellhouse") stopped Pitman's vehicle based on a speeding violation. Pitman was the vehicle's only occupant. Trooper Shellhouse eventually placed Pitman under arrest for operating the vehicle while under the influence of alcohol or drugs (OVI). As a result of Pitman's arrest, the trooper conducted an inventory search of the vehicle. Trooper Shellhouse testified Pitman was "stand-off'ish" and acted in a manner that caused the trooper to think that Pitman did not want the vehicle to be searched. (Jan. 16, 2024 Tr. at 228). During

the search, the trooper located "a clear baggie with some blue pills in it inside the center console underneath multiple different other items." (*Id.* at 227). The tablets were not in a marked container. Trooper Shellhouse conducted an online search using identifiers imprinted on the tablets, revealing them to be Adderall.

{¶4} Briana Ray ("Ray"), a criminalist for the Ohio State Highway Patrol, examined the tablets collected from Pitman's vehicle. She found there were 45 tablets and determined they contained amphetamine, a schedule II controlled substance. Ray testified that the amount found was below the bulk amount.

{¶5} The defense called Aubrianna Nelson ("Nelson") to testify. Nelson acknowledged she has a "very close" relationship with Pitman and was aware Pitman was charged with a criminal offense. (Jan. 17, 2024 Tr. at 33-34). She also admitted she had been "in a motorcycle accident, so [her] memory is not the best." (*Id.* at 35).

{¶6} Nelson testified that, a couple of days before March 3, 2022, she went to a bar and got drunk. Pitman drove her home. According to Nelson, during the ride home, a prescription bottle fell out of her purse without her realizing it. She testified that her "purse is always filled with prescriptions," she "take[s] about 20 of them," and one of the prescriptions she keeps in her purse is her stepson's Adderall tablets. (*Id.* at 36). Pitman subsequently contacted her about giving the medication back, and they made arrangements to do so. Additionally, a pharmacist testified

-3-

that Nelson's stepson had been prescribed Adderall, and the pharmacy dispensed that medication on occasions prior to March 3, 2022.

{¶7} On cross-examination, Nelson testified the Adderall prescription was automatically refilled and, despite instructions for her stepson to take two tablets a day for 30 days, she only gave her stepson a tablet on an as-needed basis. She would keep the leftover tablets.

{¶8} Pitman testified in his own defense. According to Pitman, he gave Nelson a ride in his vehicle and, the following day, discovered the tablets while cleaning his car. The tablets were loose, scattered in his back seat. He did not see a bottle, and the tablets were not his, so he wrapped them in a cigarette cellophane wrapper. He contacted Nelson and described the tablets to her. She told him they were her stepson's medication. Pitman replied that he would give them back as soon as he could. This was "a few days" before he was arrested. (Jan. 17, 2024 Tr. at 55).

{¶9} Pitman further testified that, on March 3, 2022, he got off of work around 12:30 a.m. and was going to head over to Nelson's house to give her the tablets. However, he decided to "run an errand" beforehand and ended up being pulled over by Trooper Shellhouse in the process. He admitted on cross-examination that he pled guilty to OVI from that night. He also acknowledged that his car was not clean when he was pulled over and he had only "attempted to clean"

the car when he allegedly found the tablets on the floor. Yet, to the best of his knowledge, he was able to find all of the tablets that had allegedly spilled in his car.

**{¶10}** The jury found Pitman guilty of aggravated possession of drugs. Thereafter, the trial court sentenced him to 12 months of community control supervision. This appeal followed.

*Assignment of Error*

**The evidence weighed manifestly against convicting Pitman of Aggravated Possession of Drugs.**

**{¶11}** In his single assignment of error, Pitman argues his conviction should be reversed because "there was too little evidence" that he unlawfully possessed the tablets containing amphetamine. (Appellant's Brief at 4). He asserts that "the inference [he] lawfully possessed prescribed drugs that were spilled out in his car[] is more believable and persuasive." (*Id.* at 3).

*Standard of Review*

**{¶12}** The "manifest-weight-of-the-evidence standard of review applies to the state's burden of persuasion." *State v. Messenger*, 2022-Ohio-4562, ¶ 26. "[W]e review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 2018-Ohio-1562, ¶ 168. Yet, "[o]nly in exceptional cases, where the

evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119. To reverse a judgment from a jury trial on the weight of the evidence, all three appellate judges must concur. Ohio Const., art. IV, § 3(B)(3).

*Applicable Law*

**{¶13}** The drug possession statute provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.11(A).

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

*Analysis*

**{¶14}** It was undisputed that amphetamine is a schedule II controlled substance and that Pitman possessed the tablets, which contained amphetamine. Additionally, Pitman's own testimony showed that he knowingly possessed the tablets. Thus, evidence at trial established each of the elements of the offense. R.C.

2925.11(A). Nevertheless, Pitman attempted to offer the jury an explanation for his possessing the baggie of pills in hope of an acquittal.

{¶15} Having reviewed the entire record, weighing the evidence and reasonable inferences and considering the witnesses' credibility, we do not find the jury "clearly lost its way" in resolving conflicts in the evidence and created a manifest miscarriage of justice. The State successfully attacked the credibility of Pitman and Nelson. Moreover, their testimony conflicted: Nelson said a prescription "bottle" fell out of her purse, while Pitman said the tablets were loose and he never saw any bottle—despite allegedly finding all 45 tablets on the floor of his unclean car. Other evidence also called into doubt Pitman's explanation that he was "coincidentally" on his way to return the tablets when he was pulled over. This includes the traffic stop's timing (nearly 2:00 in the morning), Pitman pleading guilty to OVI at that time, and the tablets being found buried in the vehicle's center console underneath multiple other items. *State v. Fulker*, 2024-Ohio-388, ¶ 14-15 (3d Dist.) (where evidence at trial tended to conflict with defendant's testimony, conviction for aggravated possession of drugs was not against the manifest weight of the evidence).

*CONCLUSION*

{¶16} For the foregoing reasons, we find the evidence does not weigh heavily against Pitman's conviction. Accordingly, the assignment of error is overruled. Having found no error prejudicial to the appellant in the particulars

assigned and argued, we affirm the judgment of the Marion County Court of Common Pleas.

**Judgment Affirmed**

**WALDICK and ZIMMERMAN, J.J., concur.**

**/jlm**